UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ARMANDO DIAZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 11-2232 (JAF)

(Crim. No. 10-251)

**OPINION AND ORDER**

Petitioner, Armando Díaz, brings this pro-se petition for relief from a federal court conviction pursuant to 28 U.S.C. § 2255. (Docket No. 1.) Respondent, the United States of America, opposes. (Docket No. 8.)

**I.**

**Factual and Procedural History**

We draw the following narrative from Petitioner's motions, the Government's response, and the docket of the related criminal case. Petitioner was indicted as a drug seller on narcotics trafficking and firearms charges on July 14, 2010. (Crim. No. 10-251, Docket No. 3.) After protracted plea negotiations, Petitioner decided he no longer wanted to plead guilty. On December 16, 2010, through his counsel, Ismael Rodríguez-Izquierdo ("Rodríguez"), Petitioner filed a motion requesting withdrawal of legal representation, which explained that Petitioner had told counsel that "he would not sign the outstanding plea offer nor go to trial," and had requested that Rodríguez resign as counsel. (Crim. No. 10-251, Docket No. 857.) Rodríguez agreed, stating that he believed Petitioner rejected his advice and that Petitioner appeared "to

be very vulnerable to external influences from [his fellow] inmates who . . . continuously bombard him . . . with incorrect legal advice." (Id.) The change of plea hearing was cancelled, and this court met with Petitioner and counsel to discuss the matter. (Crim. No. 10-251, Docket No. 891.) We refrained from deciding the withdrawal motion and, on December, 17, 2010, we appointed attorney José Aguayo ("Aguayo") to "discuss the case and plea agreement with the defendant," offering an independent second opinion and further information that would allow Petitioner to better evaluate his choices. (Id.) On December 22, 2010, Aguayo filed a motion with this court explaining that he had reviewed the outstanding plea agreement, as well as the indictment and the corresponding sentencing guidelines following a conviction in each scenario. (Crim. No. 10-251, Docket No. 911). Subsequently, he had visited Petitioner and discussed several topics, including: The evidence against him, the "potential sentencing guidelines with a criminal history III should he be found guilty at trial versus the plea offer," his right to reject the plea offer, and the government's right to negotiate a plea offer (and right not to negotiate one), as well as the possibility of taking a straight plea. (Id.) Aguayo also explained that he gave Petitioner his address and phone number should he have any further questions. (Id.) At his rescheduled change of plea hearing on January 29, 2010, Petitioner informed this court that he would stand trial. (Crim. No. 10-251, Docket No. 942.) The same day, Aguayo was terminated as counsel, leaving Rodríguez as sole trial counsel. After we set the trial date, a tentative change of plea hearing was set for January 12, 2011. Petitioner pleaded guilty the following day.

On January 13, 2011, Petitioner pleaded guilty to one count of conspiracy to possess with intent to distribute narcotics within 1,000 feet of housing facilities owned by a public housing

authority, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 860, stipulating to at least 300 grams but less than 400 grams of cocaine.[1]  (Crim. No. 10-251, Docket No. 1009 at 1–3.)  He also pleaded guilty to a second count—the knowing carrying and use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A).  (Id.)  In exchange, the government agreed to dismiss the counts remaining against him.  (Id. at 8.)  We took Petitioner's plea colloquy on January 13, 2011,  and we denied the attorney withdrawal motion on January 21, 2011.   (Crim. No. 10-251, Docket No. 1056.)  On May 19, 2011, we sentenced Petitioner to 106 months' imprisonment (forty-six months for the narcotics count served consecutively with sixty months for the firearms count) and a supervised release term of six years for the first count (to run concurrently with five years for the firearms count).  (Crim. No. 10-251, Docket Nos. 1805; 1806.)  Petitioner did not file a direct appeal.  (Docket No. 8 at 2.)  On December 20, 2011, Petitioner submitted his motion seeking § 2255 relief.  (Docket No. 1.)

## II.

### Standard for Relief Under 28 U.S.C. § 2255

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court.  See 28 U.S.C. § 2255.  A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States."  Id.  The petitioner is entitled to an evidentiary

---

[1] Count one of the indictment charged conspiracy to possess with intent to distribute: At least one kilogram or more of heroin, fifty grams or more of cocaine base ("crack"); five kilograms or more of cocaine; one hundred kilograms or more of marijuana; detectable amounts of Oxycodone; and detectable amounts of Alprazolam, within 1,000 feet of housing facilities owned by a public housing authority.  (Crim. No. 10-251, Docket No. 1009 at 1.)

hearing unless the "allegations, accepted as true, would not entitle the petitioner to relief, or . . .'are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" United States v. Rodríguez Rodríguez, 929 F.2d 747, 749-50 (1st Cir. 1991) (quoting Dziurgot v. Luther, 897 F.2d 1222, 1225 (1st Cir. 1990)); see 28 U.S.C. § 2255(b).

## III.

## Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Petitioner argues that: 1) there was insufficient evidence to support his conviction for the firearms count; 2) this court ignored his allegations of insufficient evidence and coercion; 3) this court refused his request for new counsel; and 4) he received ineffective assistance of counsel because he was coerced into pleading guilty to the firearms count. We discuss each argument in turn below and, finding each lacking in merit, dismiss this petition.

**A.     Sufficiency of Evidence for the Firearms Count**

Petitioner first argues that the government lacked evidence to prove he carried and used firearms as detailed in the firearms count. (Docket No. 1-1 at 2.) We first note that normally, a "significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review." Owens v. United States, 483 F.3d 48, 56–57 (1st Cir. 2007). This court may consider such "claims for the first time on habeas corpus review only if the petitioner has 'cause' for having procedurally defaulted his claims, and if the petitioner suffered 'actual

prejudice' from the errors. " Id. (quoting United States v. Frady, 456 U.S. 152, 168 (1982)). The government has not raised the issue of procedural default, which "is an affirmative defense, and a plaintiff generally is not required to negate an affirmative defense unless and until the defendant has placed it in issue." Oakes v. United States, 400 F.3d 92, 98 (1st Cir. 2005). This court can raise procedural default sua sponte, but we must first provide Petitioner with notice and an adequate opportunity to show cause and prejudice existed (apart from ineffective assistance of counsel). Id. at 97 (holding district court can raise procedural default sua sponte if waived by government, but noting that court must provide petitioner with adequate notice).

However, we need not resort to such a measure here because we reject Petitioner's argument on the merits without resorting to the affirmative defense. See Tse v. United States, 290 F.3d 462, 465 (1st Cir. 2002) (citations omitted) ("But because we are persuaded that each of these claims is meritless, we need not decide whether any of them is immune to principles of default, or, alternatively, whether [the petitioner] can establish cause and actual prejudice . . . to excuse any such default.")

Petitioner argues that there was insufficient evidence to show that he carried or used firearms within the meaning of § 924(c)(1)(A). (Docket No. 1-1 at 7.) He argues that he did not possess a firearm and was not charged with possession of one, and he also cites scattered caselaw regarding the meanings of "use" and "carry" of a firearm within the statute. (Id.) However, Petitioner's argument misses the mark. In a similar case, the First Circuit rejected the arguments of a defendant who, like our Petitioner, pointed to "a passage in the PSI Report, which informed the sentencing court that the appellant 'denied ownership of the firearm,' contradicted his admissions and so undermined the factual basis for his plea as to require the

Civil No. 11-2232 (JAF)                                                                                          -6-

court to take corrective action." United States v. Negron-Narvaez, 403 F.3d 33, 40 (1st Cir. 2005). Likewise, regardless of whether Petitioner "disavowed *owning* the gun, ownership was not an element of the offense of conviction[, and] the statement did nothing to call into question" his aiding and abetting the use and carry of firearms.[2] Id. (citations omitted). Beyond his denial of firearm possession, Petitioner's argument consists of hazy claims that the allegations were "Totally Devoid of Evidentiary support" and that the government did not present "any evidence whatsoever." (Docket No. 1-1 at 7–8.) We reject this argument, as the stipulated facts obviated the need for evidence such that might be required in a trial.

However, "Rule 11 requires that 'before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.'" United States v. Matos-Quinones, 456 F.3d 14, 21 (1st Cir. 2006) (quoting Fed. R. Crim. P. 11(b)(3)). In plea proceedings, the district court must discharge its duty to verify whether the "record permits a conclusion that the plea has a rational basis in fact.'" Id. (quoting Negron-Narvaez, 403 F.3d at 37). Rule 11 requires "a reasoned basis to believe that the defendant actually committed the crime to which he is admitting guilt," but it does not require the court to conduct a mini-trial during the plea colloquy, and certainly does not "require a test of guilt versus innocence, much less proof beyond a reasonable doubt that the defendant is in fact guilty." Id. (internal quotation marks and citations omitted).

---

[2] Moreover, Petitioner was convicted of aiding and abetting other persons in carrying and using a firearm in the contested second count. See United States v. Morales-Cartagena, 987 F.2d 849, 853 (1st Cir. 1993) ("[A]iding and abetting is a form of agency in which the law holds a defendant criminally responsible for the acts and conduct of another person even though the defendant may not have personally committed every act constituting the offense alleged.")

The district court may find—and we did so find—such a factual basis in "the defendant's admissions and concessions." Negron-Narvaez, 403 F.3d at 37. In the plea agreement, Petitioner stipulated that "during and in relation to such trafficking crimes, Armando Diaz, aiding and abetting other persons, carried and used firearms." (Crim. No. 10-251, Docket No. 1009 at 11 (emphasis added).) "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989). Moreover, at the change of plea hearing, we reviewed the facts as stipulated in the plea agreement, asking Petitioner, "Is that what happened, sir?" He replied "yes." (Crim. No. 10-251, Docket No. 2561 at 16.) The First Circuit has found "that a defendant, by responding to another person's explanation of what happened, may thereby establish the factual basis needed to undergird a guilty plea." Negron-Narvaez, 403 F.3d at 39–40 (citations omitted); see also United States v. Martinez-Martinez, 69 F.3d 1215, 1221 (1st Cir. 1995) (citations omitted) (deeming factual "description in open court—confirmed by [defendant]—sufficient to describe the elements of the charges"). A defendant's statements during a properly-conducted plea colloquy carry a presumption of truthfulness. Hernandez-Hernandez v. United States, 904 F.2d 758, 762 (1st Cir. 1990) (citations omitted). Petitioner puts forth nothing to rebut this presumption—beyond his possession argument, which we have already rejected—and so this claim fails.

**B.**     **Alleged Error of Ignoring Claims of Coercion and Lack of Evidence**

Petitioner next invokes the Due Process Clause, arguing this court erred because we "did not take into consideration that the Presentence Investigation Report [("PSR")] contains relevant information related to" his claims regarding: (1) alleged insufficient evidentiary support for the

firearms charge and (2) "the Pressure employed by [Rodriguez] to induce by coercion on [Petitioner] to Involuntarily Plead Guilty to the Firearm Count [sic]." (Docket No. 1-1 at 6.) As discussed above, the PSR recounts Petitioner's statements that "the Government has no evidence regarding the firearm count because [the gun] was not his" and that "he felt pressured to plead guilty as to the firearm because . . . he was not given other options, other than going to trial" and that he pleaded guilty "just to get it over with." (Crim. No. 10-251, Docket No. 1595 at 34.) As discussed below, we reject his argument not just because we did, in fact, consider these two claims during the colloquy and sentencing, but also because those claims lack merit.

### 1. Evidentiary Support

We have already discussed, and rejected, Petitioner's arguments regarding the sufficiency of the evidence for the firearms count above in Part III.A. Once again, Petitioner argues that the firearm was not his and, once again, we reject this possession argument as irrelevant to the offense charged. Negron-Narvaez, 403 F.3d at 40. Moreover, Petitioner's claim that this court failed in its duty to investigate these statements in the PSR fails for lack of a factual basis. (Docket No. 1-1 at 9.) We questioned Petitioner and Rodríguez about the statements in the PSR before conducting the sentencing hearing. (Crim. No. 10-251, Docket No. 2650 at 3–7.) On behalf of his client, Rodríguez explicitly raised both the issues of evidentiary sufficiency and his feeling "forced." (Id. at 5–6.) This court then questioned Petitioner at length regarding his entry of the plea and Petitioner confirmed that he wanted to proceed with sentencing, stating "I'm guilty" and that "there is no problem." (Id. at 7.)

**2.    Coercion**

A guilty plea is constitutionally valid only to the extent it is "voluntary and intelligent." Bousley v. United States, 523 U.S. 614, 618 (1998).  Petitioner argues that his counsel used "psychological pressure, lies, fear and intimidation in order to coerce and induce [him] to involuntarily plead guilty [sic]," and he did "deliberately mislead, trick and force to believe, that would be impossible to drop the firearm charge because that have to come from Washington, even though the fact that [counsel] knew that the government did not have any evidence whatsoever that could sustain the firearm conviction [sic]." (Docket No. 1-1 at 8.)  Despite its ornate introduction, the argument proves hollow; Petitioner offers one sentence of elaboration, in which his most damning allegation is that counsel told him that if he went to trial he "would receive more than ten years."  (Id.)  We will also consider the PSR, which contains his statements that he had no "other options, other than going to trial" and pleaded guilty "just to get it over with."   (Crim. No. 10-251, Docket No. 1595 at 34.)

Apart from the discussion about the consequences of trial, Petitioner does not offer any other examples of alleged coercion by his counsel, and so his argument fails.  The "strategic decision to plead guilty was not rendered involuntary by the anxieties and time pressures confronting [Petitioner.  His] unenviable position . . . is common among criminal defendants, and hardly exceptional enough to evince an overbearing of his will or to have precluded a rational assessment of the available options." United States v. Marrero-Rivera, 124 F.3d 342, 349-350 (1st Cir. 1997) (citations omitted); see also United States v. Gates, 698 F. Supp. 2d 212, 217 (D. Me. 2010) (citations omitted) ("In other words, his claim is not that his lawyer threatened him or otherwise coerced him, but that his lawyer convinced him to plead guilty and that circumstances made him feel that he had no choice but to accept a plea . . . .").  This court

ensured at the change of plea hearing that Petitioner knew that he had a choice and felt secure in his choice to plead, even taking a sidebar to discuss the plea with him. Additionally, at both the change of plea and sentencing hearings, (Crim. No. 10-251, Docket Nos. 2650 at 3–7; 2651 at 14, 17), we inquired as to whether anyone had "threatened or otherwise induced" Petitioner's plea, and "specifically asked [him] whether anyone had forced him to plead guilty, to which he responded no. Such statements in open court during a plea hearing 'carry a strong presumption of verity.'" United States v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A court is entitled to rely upon the defendant's assurances at the colloquy unless there is good reason for disregarding them, such as . . . undisclosed threats of violence. No such good reason is alleged in this case. Moreover, we have typically disregarded representations at a plea colloquy only when the allegations were highly specific and usually accompanied by some independent corroboration. As shown below, [Petitioner's] allegations have no independent corroboration to support disregarding his representations at the change of plea colloquy. Thus, we not only view his plea colloquy as evidential, but sufficiently conclusive to contradict his claims.

United States v. Pulido, 566 F.3d 52, 59–60 (1st Cir. 2009) (internal quotations and citations omitted).

Indeed, Petitioner provides no corroboration of any sort. But the lack of corroboration proves less problematic than the vague, conclusory, and speculative nature of his allegations. Petitioner does not claim that counsel threatened specific unfortunate consequences if he did not plead, nor does he elaborate at all on the nature of the alleged force. Such half-baked and vague claims do not overcome the presumption of validity regarding his contradictory statements made in open court. See United States v. Miranda, 654 F.3d 130, 139 (1st Cir. 2011)

("In short, because [Petitioner's] motion and sworn statement were so lacking in detail and corroboration, the district court was justified in relying on the change-of-plea colloquy and signed plea agreement to deny [Petitioner's] motion, and in doing so without an evidentiary hearing.")

### C.    Denial of Request for New Counsel

Petitioner next argues that this court erred in declining to appoint new counsel through a "summary denial of defendant's motion for new counsel without further inquiry." (Docket No. 1-1 at 7.) Petitioner claims, without elaboration, that there was "conflict" and that his counsel failed to engage in "meaningful adversarial testing" of the prosecution's case. (Id. at 8.) His threadbare arguments lack both a factual and legal basis.

"Not every bare allegation of a disagreement between lawyer and client is enough to trigger a right to new counsel." United States v. Segarra-Rivera, 473 F.3d 381, 385 (1st Cir. 2007) (citing United States v. Mota-Santana, 391 F.3d 42, 47 (1st Cir. 2004)). "Moreover, the mere fact that a defense attorney and his client disagree about the advisability of a plea does not justify appointing new counsel." United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002).

As recounted above in Part I, this court devoted substantial attention to this request, and discussed it with both Petitioner and counsel. Mindful of the tension that stemmed from Petitioner's frustration with his situation and his puzzling distrust of Rodríguez, we took special steps to ensure that Petitioner felt he had received sufficient advice to make an informed choice; we temporarily appointed Aguayo to offer a sort of second opinion regarding the choice whether to plead. When we later questioned Petitioner during sentencing regarding his prior troubles with counsel, he simply responded that he had "felt bad because there wasn't very good communication" and stated that when counsel visited him prior to sentencing he had not wanted

to meet with him because he "had a stomachache." (Crim. No. 10-251, Docket No. 2650 at 10.) The petitioner gives even fewer details or explanation of the mysterious conflict.

He has failed to "show that the conflict between lawyer and client was so profound as to cause a total breakdown in communication, preventing an adequate defense. Moreover, to the extent that there was a breakdown, it was the doing of defendant himself, and [a] defendant cannot compel a change [of] counsel by . . . refusing to talk with his lawyer." Mota-Santana, 391 F.3d at 48. Before denying the request, we considered various factors, including the "timing of the motion, [Rodríguez'] intimate knowledge of the case, the likely value of that knowledge at sentencing, the conclusory nature of the reasons offered by the appellant and the lawyer to support the request for new counsel, and the absence of any discernible disagreement about sentencing issues." Myers, 294 F.3d at 208. We conclude now, as we did then, that "no good cause existed for the appointment of new counsel" and it was not worth "the concomitant delay in sentencing that such an appointment would entail." Id.

**D.    Ineffective Assistance of Counsel: Coercion and the Plea Agreement**

The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted); see U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, Petitioner must show not only a deficient performance by trial counsel, "but also that the deficient performance prejudiced the defense and deprived the defendant of a fair trial." United States v. Manon, 608 F. 3d 126, 131 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 687).

Petitioner may satisfy the deficient-performance prong by showing that the trial counsel's representation "fell below an objective standard of reasonableness," a standard that is informed by "prevailing professional norms." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010)

(quoting Strickland, 466 U.S. at 688). "The prejudice factor requires the defendant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Manon, 608 F. 3d at 131–32 (quoting Strickland, 466 U.S. at 694).

Petitioner alleges ineffective assistance of counsel, recycling his claim that counsel forced him to plead guilty to the firearms count despite the alleged lack of evidence. (Docket No. 1-1 at 2–3.) Again Petitioner gives few details or specifics—save for the disjointed allegations that counsel "did not file any motion to suppress evidence or for the dismissal of the firearm count" and that counsel told him that if he lost at trial instead of pleading he "would receive more than ten years on the Drug Conspiracy Charge [sic]." (Id. at 9.) These actions as alleged do not constitute ineffective assistance, but, even if they did, Petitioner would fail the prejudice prong.

Petitioner has failed "to establish that but for [counsel's] conduct, [he] would have foregone a guilty plea and run the gauntlet of trial." Moreno-Espada v. United States, 666 F.3d 60, 66 (1st Cir. 2012). Petitioner has filed no "sworn statements or affidavits to support his contention," and he has not even stated that he "would have sought trial, and has instead buttressed his case on groundless affirmations . . . . [S]uch self-serving statements unaccompanied by either a claim of innocence or the articulation of any plausible defense that could have been raised had a defendant opted for a trial, are insufficient to demonstrate the required prejudice." Id. at 66–67 (internal quotation marks and citations omitted). Thus, we reject Petitioner's conclusory claims for their failure to demonstrate prejudice. See id. at 66 (explaining that district court may dismiss § 2255 petition without evidentiary hearing "if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested

relief, or if the allegations . . . consist of no more than conclusory prognostications and perfervid rhetoric" (quoting United States v. LaBonte, 70 F.3d 1396 (1st Cir. 1995))).

Petitioner argues that we should presume prejudice because, he alleges, counsel did not subject the prosecution's case to "meaningful adversarial testing" under United States v. Cronic, 466 U.S. 648, 659 (1984). (Docket No. 1-1 at 8.) "To qualify for the Cronic exception, "the circumstances leading to counsel's ineffectiveness must be so egregious that the defendant was in effect denied any meaningful assistance at all." Manon, 608 F.3d at 132 (internal quotation marks omitted) (citing United States v. Theodore, 468 F.3d 52 (1st Cir. 2006)). Courts "have found that standard satisfied where counsel fell asleep during the presentation of evidence against the defendant, where counsel was silent throughout the trial, and where counsel adopted and acted upon a belief that his client should be convicted. The circumstances here are a far cry from such scenarios." Id. (internal quotation marks and citations omitted).

Finally, if Petitioner means to raise further arguments through his summary of the holdings of various ineffective assistance cases, we cannot decipher them. He does not directly make any further claims or mentions of the facts related to his own case, and so need we go no further. See Cody v. United States, 249 F.3d 47, 53 n.6 (1st Cir. 2001) (ineffective assistance claim raised in a perfunctory manner in § 2255 proceeding deemed waived).

## IV.
## Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  We see no way in which a reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong.  Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

## V.

## Conclusion

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief in this court.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 10th day of May, 2012.

                                            s/José Antonio Fusté
                                            JOSE ANTONIO FUSTE
                                            U.S. District Judge